UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY EVANS,

           Petitioner,

     -vs-

ROBERT A. KIRKPATRICK, Superintendent


          Respondent.

_____

**DECISION AND ORDER**

**No. 08-CV-6358T**

## I.   Introduction

*Pro se* petitioner Anthony Evans("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered November 5, 2004, in New York State, Supreme Court, Erie County, convicting him, after a jury trial, of Burglary in the Second Degree (N.Y. Penal Law ("Penal Law") § 140.25 [2]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

On October 20, 2003, at approximately 11:00 P.M., Arthur Ackerson ("Ackerson" or "the victim") was home alone in his bed. Trial Trans. [T.T.] 64.  Ackerson lived at 164 Wecker Street in the City of Buffalo.  T.T. 62-63.  He was awakened by his doorbell, which was followed by the sound of breaking glass.  T.T. 65. Ackerson got up from his bed, and went to answer his door.

T.T. 66. Ackerson opened the door to find a man, who he later identified as Petitioner, and a woman. The two individuals rushed past Ackerson and into his home. T.T. 66-67. As they did so, Ackerson was pushed into a chair and had his T-shirt ripped. T.T. 67. Petitioner asked Ackerson for money and Ackerson indicated that he did not have any money. T.T. 67. Eventually, the woman went into Ackerson's bedroom, found $20, handed it to Petitioner, and then left Ackerson's home with Petitioner. T.T. 69.

Shortly thereafter, Ackerson called 911, describing the two intruders and explaining what had happened. T.T. 70. When police officers arrived, Ackerson told the police that he could identify the two intruders. He identified the man involved as Petitioner later that same night. T.T. 73. Thereafter, Petitioner was arrested and transported to police headquarters. T.T. 33. While in custody, Petitioner told police that he had been smoking crack cocaine all day and that he broke into Ackerson's home to get money to buy more crack cocaine. T.T. 142.

Under Indictment No. 04982-2003, Petitioner was charged with Burglary in the Second Degree. See Ind. No. 04982-2003 (Resp't Ex. A).

Prior to trial, a combined Wade/Huntley[1] hearing was conducted. At the close of this hearing, the trial court denied Petitioner's motion to suppress his identification and his statement to police. Hr'g Mins. [H.M.] 70.

A jury trial commenced on July 12, 2004 before the Hon. Ronald A. Tills. Petitioner was found guilty and subsequently sentenced as a persistent violent felony offender, in accordance with Penal Law § 70.08, to twenty-two years to life imprisonment. S.M. 7-8.

The Appellate Division, Fourth Department unanimously affirmed Petitioner's judgment of conviction on November 17, 2006. People v. Evans, 34 A.D.3d 1301 (4th Dept. 2007); lv. denied, 8 N.Y.3d 845 (2007).

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) that the trial court erred in refusing to suppress his statements to police and the show-up identification by the victim on the ground that they were the products of an illegal stop which was not supported by reasonable suspicion; (2) that the trial court erroneously permitted the prosecution to adduce testimony of a prior identification by the victim under N.Y. Crim. Proc. Law ("C.P.L.") § 60.25; (3) that

---

[1] United States v. Wade, 388 U.S. 218 (1967) (due process clause precludes states from obtaining evidence through unduly suggestive identification procedures).

People v. Huntley, 15 N.Y.2d 72 (1965) (trial court must conduct pre-trial hearing to determine voluntariness of defendant's statements to be used as evidence at trial).

Petitioner's post-arrest statement to police was involuntary and should have been suppressed; and (4) that Petitioner was erroneously sentenced as a persistent violent felony offender and the sentence is harsh and excessive. See Pet. ¶ 22A-D (Dkt. #1).

## III. General Principles Applicable to Habeas Review

### A. The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant

state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan v. Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert.</u>

denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984). The ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a

pattern of fact that is well within the mainstream of constitutional litigation. Id. at 194.

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263, n.9 (1989) (other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Id.

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333, 277-78 (1992).

### C. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). A

habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an "independent and adequate" basis for its decision by (1) showing cause for the default and prejudice attributable thereto, or (2) by demonstrating that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. See Harris, 489 U.S. at 262 (citing cases). The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. See id. It bears noting that "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

## IV. Petitioner's Claims

### 1. Claim One and a Portion of Claim Four are Procedurally Defaulted by an Adequate and Independent State Ground

In grounds one and four[2] of the petition, Petitioner contends that: (1) the trial court erred in refusing to suppress his statements to police and the show-up identification by the victim on the ground that they were the products of an illegal stop not supported by reasonable suspicion; and (2) that he was erroneously sentenced as a persistent violent felony offender. See Pet. ¶ 22A,

---

[2]    In ground four of the habeas petition, Petitioner raises the following two issues: (1) that he was erroneously sentenced as a persistent violent felony offender; and (2) that his sentence was harsh and excessive. See Pet. ¶ 22D. The former portion of this claim, which is procedurally defaulted, is discussed in this section. The latter portion of this claim, which is not cognizable on habeas review, is discussed at Section "IV, 2" below.

D.  Petitioner raised both issues on direct appeal, and they were rejected on a state procedural ground for failure to properly preserve the issues for appellate review.  See Evans, 34 A.D.3d at 1302-3.  Consequently, claim one and the portion of claim four alleging that Petitioner was erroneously sentenced as a persistent violent felony offender are procedurally barred from habeas review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, whether substantive or procedural, that is independent of the federal question and adequate to support the judgment.  See Coleman, 501 U.S. at 729.  Here, the state court relied on New York's preservation rule (codified at C.P.L. § 470.05(2)) to deny Petitioner's claims because the issues had not been properly preserved for appellate review.  The Second Circuit has determined that C.P.L. § 470.05(2) is an independent and adequate state procedural ground.  See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990);  see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999).  The Appellate Division, Fourth Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of Petitioner's claims.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause'

for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). "Cause" is defined as "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493 (1991) (quoting Murray, 477 U.S. at 488). To demonstrate prejudice, a petitioner must show more than that errors "created a possibility of prejudice, but [instead] that they worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Here, Petitioner has made no showing of the requisite cause and prejudice necessary to overcome the procedural default, nor has he demonstrated that this Court's failure to review the claims will result in a miscarriage of justice.

Accordingly, Petitioner's claims are dismissed.

**2.    The Remaining Portion of Ground Four is Not Cognizable**

Also in ground four of the petition, Petitioner argues that his sentence was harsh and excessive. See Pet. ¶ 22D. Petitioner raised this issue on direct appeal, and it was rejected on the merits. See Evans, 34 A.D.3d at 1303. As discussed below, this claim is not cognizable by this Court on habeas review.

It is well-settled law that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range.  <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citing <u>Underwood v. Kelly</u>, 692 F.Supp 146 (E.D.N.Y. 1988), <u>aff'</u> <u>mem.</u>, 875 F.2d 857 (2d Cir. 1989)); <u>accord</u> <u>Ross v. Gavin</u>, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).  Because Petitioner's sentence falls within the permissible statutory range, he may not challenge the length of the sentence in the instant proceeding.

Here, Petitioner was sentenced as a persistent violent felony offender to an indeterminate term of imprisonment of twenty-two years to life.  S.M. 8.  This term is within the range prescribed by New York law for a persistent violent felony offender convicted of one Class C felony.  <u>See</u> Penal Law § 70.08.

Accordingly, this issue presents no grounds for habeas relief, and Petitioner's claim is dismissed.

**3.  Claim Two is Deemed Exhausted But Procedurally Barred**

In ground two of the petition, Petitioner argues that the trial court erroneously permitted the prosecution to adduce testimony of a prior identification by the victim pursuant to C.P.L. § 60.25.[3] <u>See</u> Pet. ¶ 22B. Although Petitioner raised this claim on direct appeal, he did not do so in federal constitutional terms. <u>See</u> <u>Daye</u>, 696 F.2d at 191. As such, the claim is unexhausted for purposes of federal habeas review. <u>See</u> <u>id.</u> Nonetheless, because Petitioner no longer has a state court forum in which to raise the claim, the Court deems it exhausted, but procedurally defaulted. <u>See</u> <u>Gray</u>, 933 F.2d at 120.

---

[3]       C.P.L. § 60.25 provides as follows:

1. In any criminal proceeding in which the defendant's commission of an offense is in issue, testimony as provided in subdivision two may be given by a witness when:

    (a) Such witness testifies that:

        (i) He observed the person claimed by the people to be the defendant either at the time and place of the commission of the offense or upon some other occasion relevant to the case; and

        (ii) On a subsequent occasion he observed, under circumstances consistent with such rights as an accused person may derive under the constitution of this state or of the United States, a person whom he recognized as the same person whom he had observed on the first or incriminating occasion; and

        (iii) He is unable at the proceeding to state, on the basis of present recollection, whether or not the defendant is the person in question; and

    (b) It is established that the defendant is in fact the person whom the witness observed and recognized on the second occasion. Such fact may be established by testimony of another person or persons to whom the witness promptly declared his recognition on such occasion.

2. Under circumstances prescribed in subdivision one, such witness may testify at the criminal proceeding that the person whom he observed and recognized on the second occasion is the same person whom he observed on the first or incriminating occasion. Such testimony, together with the evidence that the defendant is in fact the person whom the witness observed and recognized on the second occasion, constitutes evidence in chief.

On direct appeal, Petitioner narrowly framed this claim as a matter of state law, arguing that the trial court erred in permitting testimony with respect to the victim's out-of-court identification of Petitioner, in violation of C.P.L. § 60.25. See Appellant's Br., Point II. Petitioner cited only state case law interpreting C.P.L. § 60.25 to support his position, and made no reference whatsoever to the Constitution or to any Constitutional rights in his appellate brief. As such, the state court was not alerted to the federal constitutional dimension of his claim, thereby rendering it unexhausted for purposes of federal habeas review by this Court.

Nonetheless, because Petitioner has already used his one right to appeal, see N.Y. Court Rules § 500.20, and because C.P.L. § 440.10(2)(c) precludes Petitioner from collaterally raising this on-the-record claim, the Court deems the claim exhausted, but procedurally defaulted. See Grey, 933 F.2d at 120. Petitioner has not endeavored to make a showing of cause and prejudice to overcome the procedural default, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice.

Accordingly, this claim is dismissed.

## 4. Claim Three is Meritless

In ground three of the petition, Petitioner argues that Petitioner's post-arrest statement to police was involuntary and

should have been suppressed.  See Pet. ¶ 22C.  Petitioner raised this claim on direct appeal, and it was rejected on the merits. The Appellate Division, Fourth Department determined that "[t]he court . . . properly refused to suppress the statement of defendant to the police on the ground that he was under the influence of crack cocaine and thus allegedly was incapable of voluntarily waiving his Miranda rights."  Evans, 34 A.D.3d at 1302-3. (internal citations omitted).  As discussed below, the Court finds this claim meritless.

Prior to trial, a combined Wade/Huntley hearing was held, wherein three City of Buffalo police officers testified.  Detective Phillip Torre ("Detective Torre") testified that he interviewed Petitioner shortly after he was brought to police headquarters after his arrest.  Detective Torre testified that the interview was conducted in a room approximately ten feet by eight feet with a television set and a window.  He further testified that another detective, Detective Aronica, was also present in the room when the interview was conducted.  Detective Torre testified that he first questioned Petitioner to obtain general information such as Petitioner's name and address.  Detective Torre further testified that, after doing so, Detective Aronica read Petitioner his Miranda rights from a rights card, and that Petitioner signed the rights card.  Detective Torre testified that Petitioner agreed to give a statement to police.  Detective Torre testified that Petitioner was

not promised anything in return for making the statement or threatened in any manner if he did not make the statement. He further testified that Petitioner was not cuffed during the interview, but was also not free to leave. Detective Torres testified that he memorialized Petitioner's statement in written form, and that Petitioner read and signed this statement when it was completed. Detective Torres testified that at no point during the interview did Petitioner ask for an attorney, ask for the interview to stop, or refuse to answer any questions. Hr'g Mins. 40-48.

On cross-examination, Detective Torres testified that Petitioner had told him early on in the interview that he had been smoking crack all day. Hr'g Mins. 60. Detective Torres further testified that the effects of smoking crack cocaine dissipate quickly. Hr'g Mins. 64-65.

On re-direct, Detective Torres testified that Petitioner appeared to understand what was going on and spoke intelligibly during the interview. Hr'g Mins. 66-67.

At the close of the suppression hearing, the trial court concluded that Petitioner's statement to police "was voluntary and that he knew and he understood [his] [Miranda] rights before he gave the statement." Hr'g Mins. 70.

The factual findings describing what transpired between Petitioner and the police are supported by the record at the

suppression hearing and are presumed to be correct.  <u>See</u> 28 U.S.C. § 2254(e)(1).  Petitioner has failed to rebut them with clear and convincing evidence.

**(1)  Waiver of <u>Miranda</u> Rights**

In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the Supreme Court established that certain warnings are required prior to custodial interrogation.  However, when there is a knowing and voluntary waiver of the <u>Miranda</u> warnings, law enforcement officers may question a defendant until he clearly requests an attorney or invokes his right to remain silent.  <u>See</u> <u>Davis v. United States</u>, 512 U.S. 452, 470-471 (1994).  A <u>Miranda</u> waiver may be implied from the circumstances, and where a defendant indicates that he understands his rights, does not request counsel, and proceeds to answer an officer's questions, such circumstances support the conclusion that <u>Miranda</u> was waived.  <u>See</u> <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979) (rejecting a rule that an explicit statement of waiver is necessary to support a finding that a defendant waived his right to remain silent or right to counsel guaranteed by <u>Miranda</u>).

Here, Detective Aronica read Petitioner his <u>Miranda</u> rights from a rights card, and Petitioner signed the rights card.  Hr'g Mins. 45-46.  He then proceeded to speak with Detectives Torres and Aronica and gave a statement.  That statement was memorialized in writing and was read and signed by Petitioner.  Hr'g Mins. 46-47.

Thus, this Court finds that the Appellate Division, Fourth Deaprtment reasonably concluded that the suppression court properly found a <u>Miranda</u> waiver under the evidence presented at the suppression hearing. That conclusion is in accord with clearly-established Supreme Court precedent, and the Court finds no reason to disrupt the state court's determination that Petitioner voluntarily waived his <u>Miranda</u> rights.

### (2) **Voluntariness of Petitioner's Statements**

The "ultimate issue of voluntariness [of a confession] is a legal question requiring independent federal determination." <u>Nelson v. Walker</u>, 121 F.3d 828, 833 (2d Cir.1997) (quoting <u>Arizona v. Fulminante</u>, 499 U.S. 279, 287 (1991)); <u>see</u> <u>also</u> <u>Nova v. Bartlett</u>, 211 F.3d 705, 707 (2d Cir. 2000); <u>Mincey v. Arizona</u>, 437 U.S. 385, 398 (1978) (holding that the Court is not bound by a state court's determination that a statement was voluntary; instead, the Court is under a duty to make an independent evaluation of the record). "'No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances.'" <u>Nelson</u>, 121 F.3d at 833 (quoting <u>Green v. Scully</u>, 850 F.2d 894, 901 (2d Cir.), <u>cert. denied</u>, 488 U.S. 945 (1988)). Factors to be considered include the accused's experience and education; the conditions of the interrogation; and the conduct of law enforcement officials,

notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics. Id. (citing Green, 850 F.2d at 901). "'Subsidiary questions, such as the length and circumstances of [an] interrogation," or whether "'the police engaged in the intimidation tactics alleged by the defendant," are entitled to the presumption of correctness.'" Id. (quoting Miller v. Fenton, 474 U.S. 104, 112 (1985)); see also Towndrow v. Kelly, 98-CV-0509, 2000 U.S. Dist. LEXIS 21969 (N.D.N.Y. Dec. 20, 2000).

In this case, the Court finds that, under the totality of the circumstances, Petitioner's statement was voluntarily made. Petitioner answered Detective Torre's questions responsively, coherently, and did not exhibit confusion or lack of comprehension. Petitioner was not handcuffed. There was no coercive police presence when Petitioner gave his statement; there were only two detectives in the room. No one made promises or threats to Petitioner. In addition, there was nothing unusual about the interview room in which Petitioner was questioned to suggest that the location itself was somehow inherently coercive. In short, there is nothing in the record that suggests to this Court that Petitioner's statement to police was involuntary.

Petitioner maintains that his statement was involuntary because he had consumed crack cocaine prior to the interrogation. The Court rejects this contention. First, the Court notes that

Petitioner did not testify or otherwise present evidence that he was high on crack at the time he spoke with police. The only evidence related to this issue was introduced by Detective Torre, who testified that Petitioner had told him early on in the interview that he had been smoking crack all day. Hr'g Mins. 60, 64. Detective Torres testified further, however, that Petitioner answered his questions responsively and intelligibly throughout the interview, and that at no time did it appear that Petitioner did not understand what he was doing. Hr'g Mins. 66-67.

Even assuming that Petitioner had consumed drugs before his interrogation, "the fact that he may have done so is not dispositive." United States v. Wyche, 307 F.Supp.2d 453, 463 (S.D.N.Y. March 2, 2004). Courts in this Circuit have held that "[a] statement may still be voluntarily given even when the speaker is intoxicated or under the influence of drugs, as there is no per se rule that a confession given under such circumstances is involuntary." Id. (citing Avincola v. Stinson, 60 F.Supp.2d 133, 160 (S.D.N.Y. March 19, 1999)) (citing, inter alia, United States v. Turner, 157 F.3d 552, 555-56 (8th Cir. 1998)) (despite defendant being high on PCP, evidence showed that he understood his rights and knowingly waived them, and court declines to "adopt a per se rule . . . when confronted with intoxication"); United States v. Garcia Abrego, 141 F.3d 142, 170 (5th Cir.) (statement was voluntary where drugs taken did not impair defendant's mental

capacity), <u>cert. denied</u>, 525 U.S. 878 (1998); <u>United States v.</u>
<u>Brooks</u>, 125 F.3d 484, 491 (7th Cir. 1997) (statement voluntary
despite claim that he was experiencing effects of crack cocaine,
sleep deprivation and a hand injury, he was alert, coherent and
possessed capability of making informed and voluntary choices);
<u>United States v. Grant</u>, 427 F.Supp. 45, 50 (S.D.N.Y. Oct. 15, 1976)
(statement voluntarily given by intoxicated defendant where "he was
under control of his senses and fully understood the consequences
of his statements," holding that "[c]onfessions given while under
the influence of drugs are not per se involuntary confessions").

This Court's independent review of the hearing testimony does
not support Petitioner's claim that he was high on crack cocaine
when he spoke with police, and that even if Petitioner was feeling
some effects of his alleged drug use earlier that day, he was not
intoxicated to the degree he now claims.  The record reveals that
Petitioner was in sufficient control of his mental faculties to
make it reasonable for the state courts to conclude that he was
able to voluntarily waive his rights and speak to police.

Accordingly, the Court cannot find that the state court's
determination of this issue contravened or unreasonably applied
settled supreme court law.  Consequently, the claim does not
warrant habeas relief, and the claim is dismissed.

**V.  Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      October 22, 2010
            Rochester, New York